Gerald L. Roylance
1168 Blackfield Way
Mountain View, CA 94040-2305

Phone 1-650-948-1790



**United States District Court**
**Northern District of California, San Jose Division**

| | |
|---|---|
| GERALD ROYLANCE,<br><br>  Plaintiff,<br><br>vs.<br><br>JOSEPH CARNEY;<br>SEAN CARNEY;<br>ENVIRONMENTAL SAFETY INTERNATIONAL, INC.;<br>ENVIRONMENTAL PRODUCTS INTERNATIONAL INC.;<br>SEPTIC SAFETY, INC.;<br>D.J.C. HOLDING CORPORATION, A NEW JERSEY CORPORATION;<br>DOES 1-200<br><br>  Defendants | Case NV: 13-04258<br><br>VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br>1. Telephone Consumer Protection Act<br>2. Unfair Business Practices<br>3. Unfair Advertising Practices |

## I. JURISDICTION AND VENUE

1. **Jurisdiction.** Violations of 47 U.S.C. § 227 create federal question jurisdiction. Violations of California laws fall under supplemental jurisdiction.

2. **Venue.** Venue is appropriate in the Northern District of California because a substantial portion of the events occurred in this District.

3. **Intradistrict Assignment.** The San Jose Division is appropriate. Venue in Santa Clara County is proper under California Code of Civil Procedure § 395(b) because the allegations involve

1

Verified Complaint for Damages and Injunctive Relief

telephone communications to a residential telephone in Santa Clara County. Venue is also proper under California Code of Civil Procedure § 395(a) because the injury occurred in Santa Clara County.

## II. DECLARATION ON VENUE

4. Venue in Santa Clara County is proper under California Code of Civil Procedure § 395(b) because the allegations involve Telephone Communications to a residential telephone in Santa Clara County. Venue is also proper under California Code of Civil Procedure § 395(a) because the injury occurred in Santa Clara County. Venue is proper under California Civil Code § 1780(c) because a substantial portion of each transaction occurred in Santa Clara County.

## III. IDENTIFICATION

5. Plaintiff GERALD ROYLANCE is an individual residing in Mountain View, CA.

6. On information and belief, JOSEPH CARNEY is a resident of New Jersey who controls or controlled the Defendant corporations. The Federal Communications Commission has identified him as the president of ENVIRONMENTAL SAFETY INTERNATIONAL, INC.[1] On information and belief, he is the president of ENVIRONMENTAL PRODUCTS INTERNATIONAL INC.

7. On information and belief, SEAN CARNEY is a resident of New Jersey who controls or controlled many of the Defendant corporations. The Federal Communications Commission has identified him as the vice president of ENVIRONMENTAL SAFETY INTERNATIONAL, INC.[2] On information and belief, he is the vice-president of ENVIRONMENTAL PRODUCTS INTERNATIONAL INC.

8. ENVIRONMENTAL SAFETY INTERNATIONAL, INC. is a New Jersey profit corporation, filing number 0100783998. It gave its address as 43 Industrial Avenue, Fairview, NJ 07022 and its telephone number as 201-945-0018. It also gave a telephone number of 800-505-8800. On information and belief, "Activator 1000" is a trademark of ENVIRONMENTAL SAFETY INTERNATIONAL, INC. and possibly other Defendants. On information and belief, this company is also known as "E. S. I., INC."

9. ENVIRONMENTAL PRODUCTS INTERNATIONAL INC. is a New Jersey profit corporation, filing number 0100120505. On information and belief, the corporation uses the abbreviation "E. P. I. INC." "E. P. I. INC." gives its address as P.O. Box 397, Fairview, NJ 07022. It

---

[1] FCC Citation, April 30, 2004, DA 04-1144, http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-04-1144A1.pdf.

Verified Complaint for Damages and Injunctive Relief

used the same telephone number (1-800-736-7337) as ENVIRONMENTAL PRODUCTS INTERNATIONAL, INC. The Better Business Bureau[3] reports that the telephone number is also used by ENVIRONMENTAL SAFETY INTERNATIONAL, INC. The United States Postal Service stated that P.O Box 397 is held by ENVIRONMENTAL PRODUCTS INT'L INC., 216 Anderson Ave., Fairview, NJ 07022. Dun & Bradstreet identify a company "E P I" at 420 Commercial Ave., Palisades Park, NJ.

10. There is an E. P. I., INC. registered as a domestic profit corporation with the state of New Jersey, filing number 3736629300. Plaintiff is ignorant of the relationship of this corporation to the defendants.

11. SEPTIC SAFETY, INC. is a New Jersey profit corporation, filing number 0100393426. On information and belief, its address is or was 205 Anderson Ave, Fairview, NJ; its telephone number is 201-313-0031.

12. D.J.C. HOLDING CORPORATION, A NEW JERSEY CORPORATION, is a New Jersey profit corporation, filing number 0100617335. On information and belief, its address is or was 216 Anderson Avenue Suite 3, Fairview, NJ; its telephone number is 201-313-0031. Dun & Bradstreet identified a "D.J.C. Holding Corporation" at 205 Anderson Ave, Fairview, NJ; a "DJC HOLDINGS CORP LTD" at 420 Commercial Ave, Palisades Park, NJ; a "DJC HOLDING CORP" at 340 Atlantic City Blvd, Bayville, NJ. On information and belief, D.J.C. HOLDING CORPORATION has also used the address PO Box 335, Palisades Park, NJ 07650[4].

13. Many defendants share telephone numbers, addresses, common control, and offer the same or similar products. On information and belief, many defendant entities are alter egos of each other and/or the individual defendants.

14. A shipment of "Activator 1000" involved the names "ENVIRONMENTAL PRODUCTS INT", "E. P. I. INC.", "ENVIRONMENTAL SAFETY INTERNATIONAL INC.", "ESI INC.", "ESI Products", and JOSEPH CARNEY.

15. In its Order of Forfeiture against SEPTIC SAFETY, INC.[5], the Federal Communications Commission stated, "[Septic Safety, Inc., Environmental Safety International, Inc., DJC Holding

---

[2] FCC Citation, April 30, 2004, DA 04-1144, http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-04-1144A1.pdf.
[3] http://www.bbb.org/new-jersey/business-reviews/water-filtration-and-purification-equipment/environmental-safety-international-in-ridgefield-nj-29001534
[4] See, for example, http://www.arb.uscourts.gov/courtinfo/unclaimedfunds.pdf showing unclaimed funds of $29.38.
[5] FCC, Order of Forfeiture, June 22, 2006, DA 06-1304, http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-06-1304A1.pdf, ¶ 8.

Verified Complaint for Damages and Injunctive Relief

Company, SAACA Industries, Inc., EPI Inc., and ESI Products] cannot escape liability for violations of our rule and orders simply by hiding behind a variety of company names."

16. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 to 200, inclusive, being unknown, Plaintiff sues these Defendants under fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff is informed and believes and thereon alleges that each Defendant named in this complaint is in some manner responsible for the wrongs and damages as alleged below, and in so acting was functioning, at least at times, as the agent, servant, partner, and/or employee of the Defendants, and in doing and/or not doing the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and/or employee with the permission and consent of the other Defendants.

## IV.   FACTS COMMON TO ALL CAUSES OF ACTION

### A. Plaintiff's Relationship to Defendants

17. Plaintiff's residential telephone number is 650 948-1790. The residential telephone directory lists the number under the name G. Roylance.

18. Plaintiff did not have a business relationship with any Defendant prior to the prerecorded call.

19. Plaintiff has not given any Defendant prior permission or prior express consent to transmit prerecorded messages to his telephone, 650 948-1790.

20. If Plaintiff did have a business relationship with any Defendant or had expressed consent for prerecorded calls, that relationship or consent was terminated by do-not-call requests.

### B. The Business

21. On information and belief, the Defendants develop, market, and/or sell septic tank treatments.

22. To sell the septic tank treatment, the Defendants use telephone solicitations.

23. Telemarketing companies are agents of their principals. Telemarketers enter into contracts on behalf of their principal. The telemarketer has bound the principal to a contract. The telemarketer has represented the principal to third persons.

24. Principals are responsible for the business torts of their telemarketers.

25. Principals have a nondelegable duty to obey telemarketing statutes.

Verified Complaint for Damages and Injunctive Relief

### C. Oregon Department of Justice

26. The Oregon Department of Justice, in a December 10, 2001 media release about do-not-call violations,[6] stated that "DJC HOLDING COMPANY of New Jersey, doing business in Oregon as Septic Safety, was named in an order to enforce compliance of an investigative demand. During a Justice investigation, the company refused to sign a settlement agreement and ignored a civil investigative demand. Under a Linn County Circuit Court order, the company is stopped from telemarketing or accepting payment for business obtained through telephone solicitation in Oregon."

### D. Action by the Federal Communications Commission

27. The Federal Communications Commissions ("FCC") has jurisdiction to enforce telemarketing violations.

28. On information and belief, the FCC received complaints about prerecorded telemarketing by ENVIRONMENTAL SAFETY INTERNATIONAL, INC. and other Defendants.

29. The FCC issued a citation on April 30, 2004. The document number is DA 04-1144. The citation was directed to ENVIRONMENTAL SAFETY INTERNATIONAL, INC. a/k/a Environmental Products International a/k/a Septic Safety, Inc. a/k/a DJC Holding Company a/k/a SAACA Industries, Inc. a/k/a EPI, Inc. a/k/a ESI Products. The citation was attention to JOSEPH CARNEY and SEAN CARNEY. The citation was for one or more prerecorded messages to a residential telephone line in violation of 47 U.S.C. § 227(b)(1)(B).

30. On information and belief, after the citation, the FCC received additional complaints about prerecorded telemarketing by ENVIRONMENTAL SAFETY INTERNATIONAL, INC. and other Defendants.

31. The FCC adopted a Notice of Apparent Liability for Forfeiture ("NAL") on February 2, 2005.[7] The target was SEPTIC SAFETY, INC. The NAL stated that "Septic Safety" also does business as "Environmental Safety International, Inc.", "Environmental Products International", "DJC Holding Company", "SAACA Industries, Inc.", "EPI, Inc.", and "ESI Products".

32. After the NAL, the FCC continued to receive consumer complaints about "Septic Safety".

---

[6] AG Files Actions Against No Call Violators; Reminds Consumers of December 15 Deadline to Register, December 10, 2001, http://www.doj.state.or.us/releases/2001/rel121001.shtml
[7] FCC, February 2, 2005, Notice of Apparent Liability, DA 05-287, http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-05-287A1.pdf.

Verified Complaint for Damages and Injunctive Relief

33. The FCC adopted an Order of Forfeiture on June 22, 2006.[8] The document number is DA 06-1304. The order identified additional business names of "EPI" and "EPIU".

### E. Prerecorded Call to Plaintiff on September 14, 2009

34. On September 14, 2009, plaintiff received a prerecorded message on his residential telephone line. The message was about a septic tank treatment called "Activator 1000". The call only used the name "Activator 1000".

35. The recorded message did not provide a company name.

36. The recorded message did not include a telephone number or a street address.

37. The name "Activator 1000" was in a different voice than the rest of the message. On information and belief, the message was similar to earlier prerecorded telephone messages used for SEPTIC SAFETY, INC. except that it was sound edited to replace "Septic Safety" with "Activator 1000". A transcript for an earlier "Septic Safety" call is on the web[9]:

> "Hello, this is a special notification for local septic tank owners about avoiding environmental damage and saving money. If your home is served by a septic tank please take a few seconds to hear this important message. The US Department of Agriculture has tested and approved a new product which eliminates costly pumping out of septic tanks, keeps leech fields clear, and keeps septic tank systems working efficiently for just pennies per month. The product is called Septic Safety, and it is completely safe for the environment including kids, pets, plants and plumbing systems. Septic Safety includes a one hundred percent money back guarantee of results and satisfaction, is USDA approved, and is now available here. If you would like to request free information on Septic Safety, of course at no cost or obligation whatsoever, first please just say yes after this tone. Tone"

38. The Caller Id information for the prerecorded call was "Out of area" without a telephone number.

39. A live person did not identify the company, introduce the prerecorded message, and ask permission to play the recording.

40. The prerecorded message was an unsolicited advertisement. It was part of an overall plan or marketing campaign to sell property, goods, or services.

---

[8] FCC, June 22, 2006, Order of Forfeiture, DA 06-1304, http://hraunfoss.fcc.gov/edocs_public/attachmatch/DA-06-1304A1.pdf.

[9] See http://pages.sbcglobal.net/antitm/fcc_citations.html, which gives a transcript using "Septic Safety". Compare to transcripts published on Nov 28, 2007 by "anon" at http://whocallsme.com/Phone_Number.aspx/2019452119 and by "joebanks" at http://800notes.com/Phone.aspx/1-201-945-2119/2.

Verified Complaint for Damages and Injunctive Relief

41. In order to identify the caller, plaintiff left a message for a return call.

42. On September 15, 2009, plaintiff received a live return call about "Activator 1000". The caller said he was Dan Taylor.

43. Taylor claimed the company name was Activator 1000. Taylor did not identify an actual company. Activator 1000 sounds like a product name; it does not sound like a company name.

44. The Caller Id information was Out of area, 732-606-8120.

45. The offer was for a four-year supply of a septic tank treatment; the price was $189.90.

46. In order to further identify the caller, plaintiff placed an order. Plaintiff was told he would be billed and would not have to pay first.

47. Some minutes after that call, plaintiff received some follow up calls. The caller wanted plaintiff to pay with a credit card. The caller did not identify the actual company.

48. The Caller Id information was Out of area, 732-606-8111.

49. Plaintiff subsequently received two tubs of "Activator 1000". The invoice was from EPI INC. The tubs identified "Environmental Products International". There was also a brochure from JOSEPH CARNEY and ENVIRONMENTAL SAFETY INTERNATIONAL INC.

50. On September 25, 2009, plaintiff sent a cancellation letter to Joseph Carney, Environmental Protection [sic] International, P. O. Box 397, Fairview, NJ 07022-0397 and asked for a return shipping address.

51. On October 2, 2009, plaintiff received an envelope from P. O. Box 397, Fairview, NJ 07022; no company name was given. The envelope contained a UPS mailing label to return the product.

52. Plaintiff subsequently drove to a local UPS facility to return the product.

53. Plaintiff filed an FCC Form 1088 (Junk Faxes and Telemarketing). The filing was 09-T00443616.

### F. Demand Letter

54. On September 25, 2009, Plaintiff sent a certified mail return-receipt requested demand letter to JOSEPH CARNEY and SEAN CARNEY, ENVIRONMENTAL PRODUCTS INTERNATIONAL INC., P.O. BOX 397, FAIRVIEW, NJ. The inside address was to Environmental Protection [sic] International, but the address on the envelope was corrected to ENVIRONMENTAL PRODUCTS INTERNATIONAL. The Post Office delivered the letter on September 28, 2009.

55. Although plaintiff received a return shipping label mentioned above, Defendants did not otherwise respond to plaintiff.

Verified Complaint for Damages and Injunctive Relief

56. Plaintiff specifically demanded that his telephone number, 650-948-1790, be placed on the company specific do-not-call list.

57. Plaintiff specifically demanded a written copy of the do-not-call policy per 47 C.F.R. § 64.1200(d)(1). A written copy of the do-not-call policy was not provided.

### G. Subsequent Call

58. On 6 April 2011, plaintiff received another call. The Caller ID for this call was "Out of area" with no telephone number. The caller, "Tom" with "Septic Care", knew plaintiff had previously purchased and returned Activator 1000. Tom offered plaintiff a three year supply of "Activator 2000" for $134. Plaintiff complained to the caller that he was on the company's do-not-call list. Plaintiff asked the caller for a telephone number or address, but the caller would not supply one.

59. During the call, plaintiff made another do-not-call request and demanded a written copy of the do-not-call policy. A written copy of the do-not-call policy was not provided.

### H. Conduct

60. Defendants' conduct is despicable. Despite Oregon's actions and the FCC's actions, Defendants continued to use unlawful telemarketing practices years later.

61. Defendants' conduct meets the definition of "malice" under California Civil Code § 3294. Defendants knew that prerecorded telephone solicitations without prior consent were injuries to the recipient. Joseph Carney stated to the FCC that he uses a company-specific do-not-call list; see ¶4 of the FCC's Order of Forfeiture. Despite notice and knowledge, Defendants willfully and consciously disregarded the rights of others.

62. Defendants' conduct meets the definition of "oppression" under California Civil Code § 3294. Defendants consciously disregarded the telemarketing laws and subjected persons to interruptions from their daily lives to answer telephone calls that should never have been made.

63. Defendants' conduct meets the definition of "fraud" under California Civil Code § 3294. Defendants intentionally concealed their identity. Honest advertisers want consumers to know their name; they do not hide their identity or block Caller ID. Suppressing an advertiser's identify makes it difficult for consumers to exercise their legal rights. Defendants did not provide company names or telephone numbers making it difficult to identify the caller and prosecute. On information and belief, Defendants use a variety of names in order to escape telemarketing restrictions. The FCC NAL ¶ 8

states, "ESI asserts that we should rescind our proposed forfeiture because it no longer does business under the name 'Septic Safety' ...."

## V. FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Violation of the Telephone Consumer Protection Act (TCPA. 47 U.S.C. § 227)

64. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 63 as though fully set forth herein.

65. Congress passed the Telephone Consumer Protection Act (TCPA, 47 U.S.C. § 227) to protect consumers from certain telemarketing practices.

66. Congress prohibited advertisers from using prerecorded telephone messages for unsolicited advertisements without the subscriber's prior express consent. (47 U.S.C. § 227(b).) Congress granted a private right of action ("PROA") to consumers at 47 U.S.C. § 227(b)(3). This first private right of action concerns automated calls.

67. Congress prohibited advertisers from calling residential subscribers who made do-not-call requests. (47 U.S.C. § 227(c).) Congress granted a second private right of action for consumers at 47 U.S.C. § 227(c)(5). FCC regulations require advertisers to identify themselves and follow certain procedures.

68. The second PROA has a standing requirement. Plaintiff has received more than one call in violation of subsection (c) within 12 months. In particular, plaintiff received calls in September 2009 that did not identify the seller as required by 47 C.F.R. § 64.1200(d)(4): "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." The call on September 14, 2009, did not provide an entity name or a telephone number. The calls on September 15, 2009, also did not provide an entity name.

69. Congress made the advertiser responsible for the actions of its telemarketers ("by or on behalf of"; see 47 USC § 227(c)).

70. When Congress passed the TCPA (47 U.S.C. § 227), it required the FCC to formulate regulations that telemarketers must follow. Violations of the FCC regulations are actionable under the TCPA. (47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A).)

Verified Complaint for Damages and Injunctive Relief

71. The prerecorded call on September 14, 2009, violated 47 U.S.C. § 227(b)(1)(B). It was an unsolicited advertisement transmitted without prior express consent.

72. The prerecorded call on September 14, 2009, did not identify the legal name of the caller as registered with a state corporations commission as required by 47 C.F.R. § 64.1200(b)(1). Neither did it identify the seller or telemarketer as required by 47 C.F.R. § 64.1200(d)(4).

73. The prerecorded call on September 14, 2009, did not provide a telephone number as required by 47 C.F.R. § 64.1200(b)(2) and 47 C.F.R. § 64.1200(d)(4).

74. The prerecorded call on September 14, 2009, did not supply Caller Id information as required by 47 C.F.R. § 64.1601(e).

75. The prerecorded call on September 14, 2009 did not connect plaintiff to a live sales agent within two seconds of answering the telephone nor was the required abandonment message played as required by 47 C.F.R. § 64.1200(a)(3)(vii)(6).

76. The prerecorded call and the follow on calls the next day show that agents were improperly trained in do-not-call procedures.

77. In his September 25, 2009 letter, Plaintiff demanded a written copy of a do-not-call policy but did not receive one as required by 47 C.F.R. § 64.1200(d)(1).

78. Despite making a written do-not-call request, plaintiff received a live solicitation in April 2011 in violation of 47 C.F.R. § 64.1200(d)(3).

79. The April 2011 call did not identify the seller as required by 47 C.F.R. § 64.1200(d)(4).

80. During the April 2011 call, plaintiff demanded written copy of the do-not-call policy but did not receive one as required by 47 C.F.R. § 64.1200(d)(1).

81. The caller in the April 2011 was not properly trained in do-not-call procedures as required by 47 C.F.R. § 64.1200(d)(2).

82. Defendants knew prerecorded solicitations were illegal, so the violations are "knowing" or "willful" in the language of the TCPA.

83. Defendants are guilty of oppression, fraud, and/or malice as defined by Civil Code § 3294. Despite continued notices from the FCC and other government entities, Defendants continued to violate telemarketing laws and consciously ignore the rights of residential telephone subscribers.

## VI.   SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

**Unfair Business Practices (Business & Professions Code §§ 17200 et seq.)**

Verified Complaint for Damages and Injunctive Relief

84. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 63 as though fully set forth herein.

85. Plaintiff has been injured in fact by defendants' unfair business practices. Plaintiff received an illegal prerecorded call. Furthermore, plaintiff has lost money or property as a result of those practices. Plaintiff has lost money by sending a certified letter required by the CLRA; plaintiff lost gasoline driving to the UPS store; plaintiff never received a written copy of a do-not-call policy. Plaintiff has standing under Business & Professions Code § 17204.

86. Defendants' telemarketing practices violate the TCPA.

87. Defendants' marketing practices violate the CLRA.

88. Defendants' marketing practices violate the California Unfair Advertising Practices Act.

89. Defendants' telemarketing practices violate Pubic Utilities Code § 2871 et seq.

90. Telemarketers must provide valid Caller ID information.

91. Plaintiff was not connected to a live sales agent within two seconds of answering the telephone as required by the Telemarketing Sales Rule.

## VII.   THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Unfair Advertising Practices (Business & Professions Code §§ 17500 et seq.)

92. Plaintiff realleges and incorporates the allegations of paragraphs 1 through 63 as though fully set forth herein.

93. Plaintiff has been injured in fact by defendants' unfair business practices. Plaintiff received an illegal prerecorded call. Furthermore, plaintiff has lost money or property as a result of those practices. Plaintiff has lost money by sending a certified letter required by the CLRA; plaintiff lost gasoline driving to the UPS store; plaintiff never received a written copy of a do-not-call policy. Plaintiff has standing under Business & Professions Code § 17535.

94. Defendants' telemarketing practices violate Business & Professions Code § 17500.3. A caller must immediately identify who they are and state the true purpose of the call. The caller did not adequately identify. A caller must state who they are. A caller must state who he represents. A caller must state the kinds of goods or services being offered for sale. A caller may not use any plan, scheme, or ruse to misrepresent his true status or mission.

95. The identity information in the prerecorded message did not provide an actual company name, a telephone number, or an address.

Verified Complaint for Damages and Injunctive Relief

# VIII. **PRAYER FOR RELIEF**

## A. For the First Cause of Action (TCPA)

Plaintiff prays for injunctive relief.

Plaintiff prays for at least $500 in statutory damages for each violation of the TCPA or its regulations. Plaintiff prays that each violation be trebled because it was willful or knowing as defined in the TCPA. Plaintiff claims there at least ten violations of the TCPA, so the statutory damages should be at least $15,000.

Plaintiff prays for exemplary damages according to proof. In the case of a default, plaintiff reserves $1,000,000 in exemplary damages.

Under a *BMW v Gore* guideline, first strike punitive damages may be similar to penalties levied by government agencies. The FCC is authorized to impose $16,000 for each violation of the TCPA. In that case, reasonable exemplary damages for ten violations would be $160,000. This case is not a first strike situation: the Defendants have already been subject to actions by an Attorney General and the FCC. Those actions were not an adequate deterrent; years later the Defendants are still violating the same telemarketing statutes. The exemplary damages should be much more; confiscating all profit from the venture would be appropriate.

*United Artists Theatre Circuit v. F. C. C.*, 147 F.Supp.2d 965, shows that only one subscriber in 90,000 bothered to sue under the TCPA telemarketing rules. If lawsuits are rare, then some companies (or their telemarketers) may risk such lawsuits believing the financial liability is small. For example, paying one $2,500 judgment every 90,000 calls is an average cost of 2.7 cents per call. The rare lawsuit would be a small cost of doing business.

If a telemarketer used the required live operators to introduce the call, then each call would incur labor costs for the introduction. If the operators got $18 per hour and the introductions took one minute (about 150 words), then each call requires $0.30 of labor. In 90,000 calls, the telemarketer would save $27,000 worth of labor costs.

Punitive damages should be set to make illegal telemarketing practices uneconomic. The penalty, when averaged over 90,000 calls, should be more than the economic savings of illegal automated telemarketing.

## B. For the Second Cause of Action (Unfair Business Practices)

Plaintiff prays for injunctive relief.

Verified Complaint for Damages and Injunctive Relief

### C. For the Third Cause of Action (Unfair Advertising)

Plaintiff prays for injunctive relief.

### D. Further Prayer

Court costs, costs of action, and attorney's fees.

Plaintiff prays for any other relief that the court deems proper.

## IX. JURY DEMAND

A jury trial is requested.

## X. VERIFICATION

I, Gerald Roylance, am Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at Mountain View, California.

Dated September 13, 2013

*Gerald Roylance*
Gerald Roylance

Verified Complaint for Damages and Injunctive Relief