**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GERALD ROYLANCE, | Case No. 5:13-cv-04258-PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| JOSEPH CARNEY, et al., | **(Re: Docket No. 22)** |
| Defendants. | |

Before the court is Defendants Joseph and Sean Carney's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).[1] Plaintiff Gerald Roylance opposes. The parties appeared for a hearing.[2] After considering the arguments, both at the hearing and in the papers, the court GRANTS the Carneys' motion, but only IN PART.

**I. BACKGROUND**

Gerald Roylance, a resident of Mountain View, alleges that Defendants Joseph Carney, Sean Carney, Environmental Safety International, Inc., Environmental Products Inc., Septic Safety, Inc. and D.J.C. Holding Corporation violated the Telephone Consumer Protection Act by engaging

---

[1] *See* Docket No. 22.

[2] *See* Docket No. 27

1

Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

in unlawful telemarketing.[3] Roylance specifically alleges he received two unlawful telephone solicitations on his home telephone in 2009 and 2011.[4] Roylance alleges the Carneys are residents of New Jersey.[5]

The complaint alleges Joseph is the president of one or more of defendant corporations, that Joseph "controls or controlled" the corporations, that Joseph's name was "involved" in the shipment of a product, that a 2004 FCC citation issued against the defendant corporations was sent to Joseph's attention, that Joseph's name was included in a brochure and that letters from plaintiff were addressed to Joseph.[6]

The complaint alleges Sean is the vice president of one or more of the defendant corporations, that Sean "controls or controlled" them, that a 2004 FCC citation issued against defendant corporations was sent to Sean's attention and that plaintiff sent Sean a letter.[7]

The complaint also alleges:

> Many defendants share telephone numbers, addresses, common control, and offer the same or similar products. On information and belief, many defendant entities are alter egos of each other and/or the individual defendants.[8]

No other allegations are directed towards Joseph and Sean.

As previewed above, Roylance's complaint arises from an unsolicited telephone solicitation for a product called Activator 1000 on September 14, 2009.[9] Roylance responded to the

---

[3] *See* 47 U.S.C. § 227 ("TCPA").

[4] *See* Docket No. 1 at ¶¶ 34-53, 58-59.

[5] *See id.* at ¶¶ 6-7.

[6] *See id.* at ¶¶ 6, 14, 29, 49, 50, 54.

[7] *See id.* at ¶¶ 7, 29, 54

[8] *See id.* at ¶ 13.

[9] *See id.* at ¶¶ 34-40.

solicitation and left a message.[10] Roylance then received a telephone call from a person named Dan Taylor who said his company was called Activator 1000.[11] Roylance purchased the solicited product,[12] later received telephone calls seeking payment for that purchase[13] and after receiving the product sent a "cancellation letter" to Joseph at a company not named as a defendant, asking for a return shipping address.[14] Roylance received a return shipping label, returned the product, and filed a submission with the FCC.[15] Roylance also sent a letter demanding to be placed on the "company specific do-not-call list" and that he be provided the company do-not-call policy, which Roylance claims was never received.[16]

Roylance alleges he received a second unsolicited call on April 6, 2011 from "Tom" with "Septic Care" who knew that he had purchased Activator 1000 before and offered him Activator 2000.[17] Roylance complained that he was on a do-not-call list and asked for a company name and address, which was not provided.[18] Roylance orally demanded to be placed on

---

[10] *See id.* at ¶ 41 ("In order to identify the caller, plaintiff left a message for a return call.").

[11] *See id.* at ¶¶ 42-44 ("On September 15, 2009, plaintiff received a live return call about "Activator 1000". The caller said he was Dan Taylor. Taylor claimed the company name was Activator 1000, Taylor did not identify an actual company. Activator 1000 sounds like a product name; it does not sound like a company name.").

[12] *See id.* at ¶¶ 45-46 ("The offer was for a four-year supply of a septic tank treatment; the price was $189,90. In order to further identify the caller, plaintiff placed an order. Plaintiff was told he would be billed and would not have to pay first.").

[13] *See id.* at ¶¶ 47-48 ("Some minutes after that call, plaintiff received some follow up calls. The caller wanted plaintiff to pay with a credit card. The caller did not identify the actual company.").

[14] *See id.* at ¶ 50.

[15] *See id.* at ¶¶ 51-53.

[16] *See id.* at ¶¶ 54-57.

[17] *See id.* at ¶¶ 58-59 ("On 6 April 2011, plaintiff received another call. The Caller ID for this call was "Out of area" with no telephone number. The caller, "Tom" with "Septic Care", knew plaintiff had previously purchased and returned Activator 1000. Tom offered plaintiff a three year supply of "Activator 2000" for $134. Plaintiff complained to the caller that he was on the company's do-not-call list. Plaintiff asked the caller for a telephone number or address, but the caller would not supply one. During the call, plaintiff made another do-not-call request and

3
Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

the do-not-call list of the unspecified company and that he be provided with a copy of the do-not-call policy, which was never received.[19]

Based on these alleged facts, Roylance prayer seeks damages for ten violations of the TCPA,[20] trebling[21] and punitive damages.[22] Roylance additionally brings state law claims for unfair business practices and unfair advertising for which he seeks injunctive relief only.[23] Roylance also requests attorney's fees even though he is pro se.[24]

## II. LEGAL STANDARDS

### A.     Fed. R. Civ. P. 12(b)(2)

"In a motion challenging personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists."[25]  "Where, as here, there is no federal statute that governs personal jurisdiction, the Court must apply the law of the state in which it sits."[26]  In this case, because "California's long-arm jurisdictional statute is coextensive with

---

demanded a written copy of the do-not-call policy. A written copy of the do-not-call policy was not provided.").

[18] *See id.* at ¶ 58.

[19] *See id.* at ¶ 59.

[20] *See id.* at ¶¶ 64-83.

[21] *See id.* at 12:5-7 ("Plaintiff prays that each violation be trebled because it was willful or knowing as defined in the TCPA. Plaintiff claims there at least ten violations of the TCPA, so the statutory damages should be at least $15,000.").

[22] *See id.* at 12:8-9 ("Plaintiff prays for exemplary damages according to proof. In the case of a default, plaintiff reserves $1,000,000 in exemplary damages.").

[23] *See id.* at ¶¶ 84-95, 12:25-13:2.

[24] *See* Docket No. 1 at 13:4.

[25] *Rupert v. Bond*, Case No. 5:12-cv-05292-LHK, 2013 WL 5272462, at *4 (N.D. Cal. Sept. 17, 2013) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

[26] *Richmond Technologies, Inc. v. Aumtech Bus. Solutions*, Case No. 5:11-cv-02460-LHK, 2011 WL 2607158, at *4 (N.D. Cal. July 1, 2011) (citing *Schwarzenegger*, 374 F.3d at 800).

federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."[27] That is, for this court to exercise personal jurisdiction over Defendants, each "must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[28]

"A federal court may exercise either general or specific jurisdiction over a non-resident defendant."[29] General jurisdiction exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world."[30] "Specific jurisdiction is more limited in scope and can be exercised where the defendant has sufficient minimum contacts with the forum state, and the plaintiff's claims arise out of those contacts."[31] "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there," a defendant is fairly on notice of possible suit "if the defendant has 'purposefully directed' his activities at residents of the forum[32] and the litigation results from alleged injuries that 'arise out of or relate to'[33] those activities."[34]

**B.   Fiduciary Shield Doctrine**

"The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely

---

[27] *Schwarzenegger*, 374 F.3d at 800-01.

[28] *Id.* at 801 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[29] *Aumtech Bus*, 2011 WL 2607158, at *4.

[30] *Schwarzenegger*, 374 F.3d at 801.

[31] *Aumtech Bus*, 2011 WL 2607158, at *4 (citing *Schwarzenegger*, 374 F.3d at 801-02).

[32] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

[33] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[34] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

on the basis of their employers' minimum contacts within a given jurisdiction."[35]  "The mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well."[36]  Though employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."[37]  "The fiduciary shield doctrine may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities."[38]  "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."[39]  "Personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure' in the challenged corporate activity."[40]

**C.    Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader

---

[35] *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, Case No. 4:08-cv-4254-PJH, 2009 WL 29905, at *5 (N.D. Cal. Jan. 5, 2009).

[36] *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999); *see also Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("'Under the fiduciary shield doctrine a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.'").

[37] *Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding jurisdiction proper over non-resident corporate employees where the employees were the primary participants in an alleged wrongdoing intentionally directed at a California resident).

[38] *j2 Global*, 2009 WL 29905, at *5 (citing *Wolfe Designs*, 322 F. Supp. 2d at 1072).

[39] *Wolfe Designs*, 322 F. Supp. 2d at 1072 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation" where the officer was "an actual participant in the tort")).

[40] *j2 Global*, 2009 WL 29905, at *5 (citing *Wolfe Designs*, 322 F. Supp. 2d at 1072; *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524 (9th Cir. 1989)).

6
Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

is entitled to relief."[41] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[42] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[44] Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[45]

### III. DISCUSSION

**A.   The Complaint Has Not Adequately Alleged Personal Jurisdiction Over Joseph and Sean Carney**

The Carneys first challenge this court's personal jurisdiction over them as individually-named defendants. Roylance has not pleaded the Carneys' personal involvement or knowledge of the alleged calls; the conclusory allegation that Sean and Joseph are corporate officers in control of the Defendant corporations thus lacks factual support and therefore is insufficient, even at the pleading stage.[46] Especially in light of the absence of any allegation that

---

[41] Fed. R. Civ. P. 8(a)(2).

[42] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[44] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[45] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[46] *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009)

> Plaintiffs' allegations do not support the conclusion that Wal-Mart is Plaintiffs' employer. Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotation marks and alterations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

7
Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

(1) the corporation is the agent or alter ego of the Carneys or (2) that Carneys were the guiding spirit or central figure puppeteering the disputed calls,[47] personal jurisdiction plainly is absent and dismissal is warranted.  Nevertheless, because the court is not yet persuaded that amendment on this score would be futile, Roylance is granted leave to amend.

**B.       Roylance's Telephone Consumer Protection Act Claim**

Because Roylance's prayer alleges ten violations of the TCPA, but the complaint only alleges two unsolicited calls and directly ties the Carneys to only one of those calls, the Carneys also move the court to dismiss for failure to state a claim.  Although the court agrees that Roylance has not pleaded sufficient facts to support ten violations of the TCPA, the court also agrees that prayers "for relief are not substantive portions of the complaint and are harmless if not supported by the evidence."[48]  Because the claim itself does not articulate which calls the Carneys are alleged to have made or been tied to with clarity, dismissal of this claim with leave to amend is appropriate.  Any amended complaint shall spell out exactly the calls Roylance believes were unsolicited, who was responsible for those calls and tie specific alleged violations to the TCPA statutory relief sought.

**C.       Because the Statutory Trebling Provided for Under the TCPA is Compensatory, Dismissal of Roylance's Prayer for Punitive Damages Is Not Warranted**

The Carneys next challenge Roylance's prayer for punitive damages.  Although courts "interpreting analogous statutory damages provisions have found that where a statute provides a remedy that is punitive in nature, a plaintiff may not recover punitive damages in addition to the

---

(holding that the pleading requirements stated in *Twombly* apply in all civil cases); *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (stating that "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").

[47] *See supra* notes 38 and 40.

[48] *Leadership Council for Metro. Open Communities v. Town of Cicero*, Case No. 84-cv-4084, 1985 WL 1650, at *2 (N.D. Ill. May 31, 1985).

8
Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

punitive statutory" damages,[49] no court from this district has weighed in on whether the trebling of damages pursuant to the TCPA is punitive in nature.[50] The Eleventh Circuit appears to be the one court to squarely address the issue. It held "the TCPA's treble damages provision falls more on the compensatory than the punitive side."[51] The Eleventh Circuit arrived there after noting that:

> The Supreme Court has addressed the issue of whether treble damages should be considered compensatory or punitive in the context of several different statutes. Generally, Supreme Court "cases have placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405 (2003). The Supreme Court has found that "the tipping point between payback and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation." *Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003). In fact, treble damages statutes defy easy categorization as compensatory or punitive in nature. Whether treble damages under a given statute are considered compensatory or punitive is an intensely fact-based inquiry that may vary statute-to-statute. [string cite omitted]
>
> In short, there is no rigid rule on characterizing treble damages statutes as either compensatory or punitive.[52]

Because (1) "classic punitive damages" leave "the jury with open-ended discretion over the amount" of the damage award and such discretion is not afforded here and (2) in light of "the relatively small amount of statutory damages available under the TCPA," the court agrees that treble awards provide "a mechanism to encourage victims of unsolicited 'junk'" communication to

---

[49] *Doran v. Embassy Suites Hotel*, Case No. 3:02-cv-01961-EDL, 2002 WL 1968166, at *2 (N.D. Cal. Aug. 26, 2002) (citing *DeAnza Santa Cruz Mobile Estates Homeowners Ass'n v. DeAnza Santa Cruz Mobile Estates*, 94 Cal. App. 4th 890, 915 (2001) ("We have found no persuasive authority for the proposition that plaintiff is allowed to recover punitive damages [under Civil Code section 3294] based solely on a statutory violation where the statute expressly provides for a penalty that is punitive in nature.").

[50] The Carneys direct the court to a case which suggests the TCPA is punitive in nature, but that case refers to the Tennessee Consumer Protection Act. *See PAI Corp. v. Integrated Sci. Solutions, Inc.*, Case No. 3:06-cv-00767-EDL, 2006 WL 1390564 (N.D. Cal. May 22, 2006) ("Plaintiff bases its claim for treble damages on the Tennessee Consumer Protection Act ('TCPA'), Tenn. Code Ann. § 47-18-109(a). Notably, Plaintiff's complaint does not allege a claim for violation of the TCPA. The trebling of damages under the TCPA is in the nature of punitive damages.").

[51] *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 778 (11th Cir. 2011) ("The statute itself does not say whether these treble damages are considered compensatory or punitive. While this Court has not ruled on the nature of treble damages in the TCPA, we have held that the TCPA's $500 statutory damages provision is not punitive.") (citing *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008)).

[52] *Alea London*, 638 F.3d at 776-78.

9
Case No. 5:13-cv-04258-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

file suit and are not designed to punish.[53] Because the treble damages at issue in the TCPA are not punitive in nature, dismissal of Roylance's prayer for punitives is not warranted.

### D. Because Roylance Is Pro Se, Attorney's Fees Are Unavailable

The Carneys finally challenge Roylance's pursuit of attorney's fees. Because it is uncontroversial that a pro se party like Roylance who is not an attorney is not entitled to attorney's fees,[54] Roylance's prayer for fees[55] must be struck.

### IV. CONCLUSION

The Carneys' motion is granted-in-part and with leave to amend as provided above. Any amended complaint shall be filed no later than May 6, 2014.

**IT IS SO ORDERED.**

Dated: April 23, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[53] *Id.* at 778-79 (citing *Chandler*, 538 U.S. at 131 (stating that difference between double and treble damages in qui tam cases may serve not to punish, but instead to encourage private plaintiffs to litigate).

[54] *See Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991) (holding that a pro se litigant cannot be awarded attorney's fees, even where the litigant is an attorney and the statute provides for recovery of fees).

[55] *See* Docket No. 1 at 13.